UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELAINE F.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00075-JPH-TAB |
| | ) |
| ANDREW M. SAUL Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Elaine F. seeks judicial review of the Social Security Administration's decision denying her petition for disability insurance benefits. For the reasons below, the decision is **AFFIRMED**.

**I.
Facts and Background**

On October 17, 2016, Plaintiff applied for disability and disability insurance benefits, alleging that her disability began on June 6, 2011. Dkt. 5-2 at 16. The Social Security Administration ("SSA") denied her application at the initial and reconsideration stages. *Id.*

Administrative Law Judge ("ALJ") Daniel J. Mages held a hearing on December 10, 2018 and later denied Plaintiff's application for benefits. *Id.* at

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

16, 26. In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and found that:

- At step one, Plaintiff had not engaged in "substantial gainful activity"[2] from her alleged onset date of June 6, 2011 through her date last insured of March 31, 2018. *Id.* at 18.

- At step two, Plaintiff had severe impairments of "plantar fasciitis; degenerative disc disease; hypertension; non-insulin dependent diabetes mellitus; obesity; trigeminal neuralgia; headaches; carpal tunnel syndrome; and cubital tunnel syndrome." *Id.*

- At step three, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." *Id.* at 20.

- Between steps three and four, Plaintiff had the Residual Functional Capacity ("RFC") "to perform a range of light work (20 C.F.R. § 404.1567(b)) defined as follows: sitting six hours during an eight-hour workday; standing and walking four hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; no work around dangerous moving machinery or at unprotected heights; frequent fingering and handling bilaterally; no vibrating tools; occasional speech as part of the job duties; and simple routine tasks with the ability to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence." *Id.* at 21.

- At step four, Plaintiff could perform her "past relevant work as a school bus monitor as generally performed in the national economy," which "did not require the performance of work-related activities precluded" by her RFC. *Id.* at 25.

On January 9, 2020, Plaintiff brought this action for review of SSA's denial of benefits under 42 U.S.C. §§ 405(g) and § 1383(c)(3). Dkt. 1.

---

[2] SSA regulations define "substantial gainful activity" as work activity that is both "substantial" ("involves doing significant physical or mental activities") and "gainful" ("usually done for pay or profit, whether or not a profit is realized"). 20 C.F.R. § 404.1572(a).

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires "an inability to engage in any substantial gainful activity." *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154. In evaluating the evidence, the Court gives the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for steps one through four but shifts to the Commissioner at step five. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
## Analysis

Plaintiff argues that: (A) the ALJ did not properly address her subjective symptoms; (B) the ALJ miscalculated her RFC, which rendered the ALJ's hypothetical questions to the vocational expert flawed; and (C) the ALJ gave her treating physician's opinion insufficient weight. Dkt. 7 at 4.

### A. Subjective Symptom Analysis

Plaintiff argues that the ALJ did not properly address her subjective symptoms because his decision (1) did not expressly address each factor required by SSA regulations and (2) ignored supportive evidence. *Id.* at 4, 19–21.

#### 1. Consideration of Required Factors

If an ALJ cannot make a fully favorable disability determination "based solely on objective medical evidence," then he should "carefully consider other evidence in the record" and the factors set forth in 20 C.F.R. § 404.1529(c)(3) to evaluate "the intensity, persistence, and limiting effects of an individual's

symptoms." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), at *6–8; *see* 20 C.F.R. § 404.1529(c)(3). These factors include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and (5) treatment and measures, other than medication, an individual has received or taken for relief of pain or other symptoms. *Id.*

Plaintiff relies on SSR 16-3p to argue that the ALJ erred in considering her subjective symptoms but does not identify or explain which SSR 16-3p factor the ALJ failed to consider. *See* dkt. 7 at 4, 16–20. The Commissioner contends that the ALJ "properly considered Plaintiff's subjective complaints about her symptoms." Dkt. 13 at 4.

In his decision, the ALJ recognized his duty to "consider other evidence in the record" if the objective medical evidence alone could not substantiate Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms." Dkt. 5-2 at 21. And it appears that the ALJ addressed each factor set forth in SSR 16-3.

First, the ALJ considered the effects that Plaintiff's symptoms had on her daily activities. For example, the ALJ recognized Plaintiff's statement that it was "difficult for her to squat, bend, talk, remember, complete tasks, concentrate, and understand" and that her conditions have "caused her to be less sociable and [to] leave her home less frequently." Dkt. 5-2 at 21–22. The

6

ALJ also noted Plaintiff's reports of "difficulty dealing with stress and changes in routine" and "experiences [of] drowsiness and difficulty sleeping." *Id.* at 22. The ALJ considered Plaintiff's ability to walk only three or four blocks and stand for 15-20 minutes at a time "due to pain from plantar fasciitis" and discussed her avoidance of "opening her mouth wide and facial movement." *Id.* at 23. And the ALJ discussed Plaintiff's ability to "write with her dominant hand," "fully close all fingers into a fist, and button clothing using both hands," and her inability to "walk on her toes" without pain and to "walk on her heels." *Id.*

Second, the ALJ discussed the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms. The ALJ considered Plaintiff's occasional reports of "pain, numbness, and tingling in her upper and lower extremities," which Plaintiff described as "intermittent and worse at night." Dkt. 5-2 at 22. The ALJ noted Plaintiff's testimony about "nearly constant headaches" and her previous reports of "intermittent headaches occurring over" a six-month period in 2014. *Id.* The ALJ also discussed her testimony about "stabbing pains in her gums and facial tightening" and "anxiety and depression." *Id.*

Third, the ALJ assessed factors that precipitate and aggravate the symptoms. For example, the ALJ noted Plaintiff's reports that "her headaches [were] not aggravated by alcohol, noise, bright light, or pressure over her temporal arteries." Dkt. 5-2 at 22. The ALJ also "considered how weight affects [Plaintiff's] ability to perform routine movement and necessary physical

7

activity within the work environment" because "obesity is a risk factor that increases an individual's chances of developing impairments in most body systems." *Id.* at 23.

Next, the ALJ weighed the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms. The ALJ recognized the "medication side effects of drowsiness and nausea," that Plaintiff's "hypertension was controlled with medications," and that "her parasthesias resolved with vitamin B12 injections." Dkt. 5-2 at 22. The ALJ also noted Plaintiff's reports that "her facial pain has been controlled by Neurontin and Tegretol, with only minimal breakthrough pain" and that "over the counter medication and oral steroids improve her [headache] symptoms." *Id.*

Finally, the ALJ considered treatment, other than medication, that Plaintiff receives or has received for relief of pain or other symptoms. The ALJ cited evidence that Plaintiff declined a referral to see a hand specialist after receiving instructions to wear hand and wrist braces for her diagnosed carpal tunnel syndrome and "withdrew from physical therapy after her initial evaluation" for treatment of her diagnosed plantar fasciitis. Dkt. 5-2 at 22–23.

Since the ALJ addressed each factor and Plaintiff has not identified or explained a specific error in the ALJ's analysis, remand is not required on this ground. *See Apke v. Saul*, 817 F. App'x 252, 257–58 (7th Cir. 2020) (deferring to ALJ when plaintiff failed to show ALJ's subjective symptom evaluation was "patently wrong").

**2. Assessment of Supportive Evidence**

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted). "But an ALJ need not mention every piece of evidence, so long [as] he builds a logical bridge from the evidence to his conclusion." *Id.*

Plaintiff claims that the ALJ ignored several medical records that supported her subjective symptoms for her headaches and facial pain. *See* dkt. 7 at 19.[3] First, Plaintiff points to Dr. James Zhang's notes following sixteen office visits from May 2014 through November 2017. *Id.* Each of these records contains a "History of Patient Illness" section, which describes the onset of Plaintiff's headaches as "gradual" but that they "had been occurring in an intermittent pattern for 6 months prior to her first office visit." *See, e.g.*, dkt. 5-13 at 4 (Nov. 6, 2017 visit).[4] These headaches followed a "constant" course, could be "severe and throbbing," and could happen "any time of the day." *Id.* Besides Dr. Zhang's notes, Plaintiff also points to other evidence

[3] One of Plaintiff's citations, dkt. 5-13 at 33, is mostly illegible, and Plaintiff has not explained how it supports her subjective symptoms. Another does not appear to help her case, and Plaintiff has not provided an explanation for it. *See* dkt. 5-16 at 61 (describing Plaintiff's choice to stop taking medication for her trigeminal neuralgia).

[4] *See also* dkt. 5-13 at 8 (Sept. 22, 2017 visit), 13 (July 31, 2017 visit), 17 (May 10, 2017 visit); dkt. 5-10 at 14 (Dec. 9, 2016 visit), 16 (Sept. 2, 2016 visit), 19 (Aug. 22, 2016 visit), 22 (Aug. 12, 2016 visit), 27 (July 1, 2016 visit), 30 (June 8, 2016 visit), 36 (Feb. 19, 2016 visit), 39 (Feb. 12, 2016 visit), 44 (Jan. 20, 2015 visit), 46 (Dec. 4, 2014 visit), 48 (July 14, 2014 visit), 51 (May 20, 2014 visit).

showing "flare ups" of her facial pain and headaches.  *See* dkt. 5-11 at 37; dkt. 5-19 at 2; dkt. 5-12 at 20; dkt. 5-16 at 66; dkt. 5-7 at 26.

But contrary to Plaintiff's assertions, the ALJ cited and discussed, rather than ignored, this information.  The ALJ cited Dr. Zhang's notes as evidence that Plaintiff had "intermittent headaches occurring over the previous six months" and that Plaintiff's symptoms improved with "over the counter medication and oral steroids."  Dkt. 5-2 at 22; *see also* dkt. 5-13 at 8.  And the ALJ discussed Plaintiff's reports of "nearly constant headaches" and "severe pain flares up to three times a week" and found that Plaintiff suffered from the "severe impairment" of "headaches."  Dkt. 5-2 at 18, 22–23.  Plaintiff has thus not shown that the ALJ ignored evidence related to her headaches and facial pain.

Moreover, Plaintiff has failed to show that substantial evidence does not support the ALJ's findings.  Plaintiff contends that the ALJ erred in his conclusion that her headaches and facial pain are "controlled with medication" because she has suffered "flares and continued difficulties" despite medication.  Dkt. 7 at 27.  But a district court must review an ALJ's factual conclusion on whether a "condition is treated and controlled by medication" under the "substantial evidence" standard.  *See Truelove v. Berryhill,* 753 F. App'x 393, 397 (7th Cir. 2018).  This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek,* 139 S. Ct. at 1154.  Here, a reasonable person could accept the ALJ's factual conclusion that Plaintiff's headaches and facial pain were controlled by

medication. Indeed, Plaintiff said "she c[ould] live with" the pain and that certain medications helped. Dkt. 5-13 at 8; *see* dkt. 5-7 at 37, 42 ("[Patient] is taking Neurontin and says it is controlling her [symptoms] well . . . ."); dkt. 5-9 at 11–12 (medical record indicating that "the trigeminal pain on the right side of [her] face is under control" "despite decreasing medication with very minimal breakthrough pain and she is not bothered by that at all"); dkt. 5-8 at 8, 13. Because a reasonable mind could accept the ALJ's factual conclusion that Plaintiff's pain was controlled with medication based on this evidence, Plaintiff has not shown the ALJ erred in his assessment of her subjective symptoms. *See Biestek*, 139 S. Ct. at 1154.

## B. RFC Calculation

A claimant's RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008). As relevant here,[5] the ALJ's RFC found that Plaintiff could:

- Frequently finger and handle bilaterally;
- Occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and perform speech as part of the job duties;

---

[5] Plaintiff does not appeal the RFC's exertional limitations on her ability to sit, stand, walk, lift, carry, push, and pull. *See* dkt. 7 at 22 (challenging only non-exertional limitations); *Jeske v. Saul*, 955 F.3d 583, 595–96 (7th Cir. 2020) (describing exertional limitations listed in SSR 96-8p).

11

- Never climb ladders, ropes, or scaffolds, work around dangerous moving machinery or at unprotected heights, or use vibrating tools; and

- Perform simple routine tasks with the ability to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence.

Dkt. 5-2 at 21.

Plaintiff argues that the ALJ did not "explain any basis in evidence to support" these limitations or include a "function-by-function assessment." Dkt. 7 at 22. The Commissioner responds that "the ALJ thoroughly explained the bases for his [RFC] assessment" by describing "how each restriction accommodated Plaintiff's limitations." Dkt. 13 at 1.

"The RFC assessment must . . . identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 61 Fed. Reg. 34474-01 (July 2, 1996). But the lack of an explicit "function-by-function written account" of a claimant's RFC "does not necessarily prevent [a court] from concluding that the ALJ appropriately considered a function." *Jeske*, 955 F.3d at 595–96. The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Id.* at 596.

For his conclusion on handling and fingering, the ALJ explained that the "[r]estriction to frequent bilateral fingering and handling adequately addresses any limitations" because Plaintiff exhibited "no worse than borderline carpal

12

tunnel syndrome" based on her lack of "grip weakness or muscle atrophy" and on results from a "June 2014 upper extremity [electromyography]." Dkt. 5-2 at 22, 24.  The ALJ therefore "acknowledge[d] a specific functional restriction" based on medical evidence.  *Jeske*, 955 F.3d at 596.

For the remaining restrictions, the ALJ stated that the RFC "accommodates pain and other symptoms from the claimant's various impairments, in addition to medication side effects, with environmental limitations and by restricting her to unskilled work." Dkt. 5-2 at 24.  In making this RFC calculation, the ALJ gave "some weight to the opinions from the state agency medical and psychological consultants who determined that the claimant could perform medium work . . . with additional postural and environmental limits." *Id.*

And the ALJ "discussed evidence" on "specific functional restriction[s]" for these remaining limitations.  *See Jeske*, 955 F.3d at 595–96.  As analyzed above, substantial evidence supports the ALJ's treatment of Plaintiff's headaches and facial pain.  *See supra* p. 5–11.  For Plaintiff's reports of "lower back and foot pain," the ALJ found that (1) the evidence did not show nerve or spinal cord issues; (2) Plaintiff said she "could not identify a specific trigger for these symptoms" and "that her symptoms were not currently bothersome" in September 2016; (3) she withdrew from physical therapy; and (4) "her gait, range of motion, and lower extremity strength and sensation were normal throughout the period at issue." Dkt. 5-2 at 20, 23.  Still, the ALJ assigned RFC limitations addressing her "pain and other symptoms." *See id.* at 21, 24.

13

For the RFC limitation of only occasional "speech as part of [her] job duties," the ALJ stated that her "speech was fluent" but that she "avoided opening her mouth wide and facial movement." Dkt. 5-2 at 23. And limiting Plaintiff's RFC to "simple routine tasks with the ability to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence" accommodates her "difficulty dealing with stress and changes in routine." *Id.* at 22; *see Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019) (holding that RFC "confining the claimant to 'simple, routine tasks'" can be "adequate" for a claimant with "'stress- or panic-related' limitations").

Plaintiff does not point to any evidence undermining the ALJ's RFC analysis or suggesting that greater restrictions are necessary. *See* dkt. 7 at 24. And the ALJ provided a lengthy discussion of Plaintiff's testimony, the medical facts, and non-medical evidence before reaching his RFC conclusions. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (holding an ALJ's RFC analysis "adequate" when the ALJ "provided a lengthy discussion of [the claimant's] testimony regarding all her impairments and the information in the medical records."). The ALJ's discussion is thus "adequate" under SSR 96-8p, so the ALJ's hypothetical questions to the vocational expert based on that analysis were not erroneous. Remand is therefore not required on this ground.

### C. Weight Given to Treating Physician's Opinions

Last, Plaintiff argues that the ALJ failed to properly discuss her neurologist's opinion by (1) not giving it controlling weight and (2) not following

14

the "appropriate checklist" in allocating weight to his opinion. Dkt. 7 at 4, 27–28.

### 1. Controlling Weight

Plaintiff argues that the ALJ erred when he "elected not to accord" neurologist Dr. Zhang's opinion "controlling weight." Dkt. 7 at 27. The Commissioner responds that "the ALJ reasonably discounted" Dr. Zhang's opinion "because his own treatment notes repeatedly showed that Plaintiff had normal neurological examinations and that medication controlled her symptoms." Dkt. 13 at 1.

An ALJ is "required to give 'controlling weight' to a treating physician's medical opinion on the nature and severity of an impairment if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with other substantial evidence.'" *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019) (citing 20 C.F.R. § 404.1527(c)[6]). And "[a]n ALJ must offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527). "Once well-supported contrary evidence is introduced, however, a treating physician's opinion becomes just another piece of evidence for the ALJ to evaluate." *Karr v. Saul*, No. 20-1939, 2021 WL 684329, at *2 (7th Cir. Feb. 23, 2021).

---

[6] This regulation applies to claims filed before March 27, 2017, so it applies here. 20 C.F.R. § 404.1527; *see* dkt. 5-2 at 16 (application filed October 17, 2016).

Here, Plaintiff's neurologist Dr. Zhang stated that she could sit for about four hours per day, stand or walk about four hours per day, occasionally lift up to ten pounds, occasionally look up or down and turn her head to the right or left, that she would miss about four days of work per month due to her impairments, and that she required a job that permitted shifting positions at will. Dkt. 5-2 at 24 (referencing dkt. 5-19 at 23–27). The ALJ gave "limited weight" to this opinion because Dr. Zhang "did not identify objective evidence supporting" it and because it was "not consistent with his treatment records, or the overall medical evidence." *Id.* at 24–25.

Inconsistencies between a medical source's statement and a claimant's medical record can qualify as a "good reason[]" for discounting that medical source's statement. *See Campbell*, 627 F.3d at 306; *O'Neal v. Colvin*, No. 1:15-CV-0318-DKL-WTL, 2016 WL 1056057, at *5 (S.D. Ind. Mar. 17, 2016) (holding that ALJ "gave good reasons for according the medical source statement . . . little weight [because] it was not consistent with [claimant's] medical record and evidence"). And here, the ALJ cited specific examples of how Dr. Zhang's recommended limitations did not match information from his own medical records. Dkt. 5-2 at 25 (noting that his records show "that the claimant's pain . . . is controlled with medication" and that her headaches are "not triggered or worsened by changes in position.").

Moreover, Plaintiff has not pointed to specific "medically acceptable clinical and laboratory diagnostic techniques" that support Dr. Zhang's methods or otherwise contradict the ALJ's conclusion that Dr. Zhang's findings

16

were inconsistent with other substantial evidence in the record. *See Burmester*, 920 F.3d at 512.

Finally, Plaintiff has not cited any authority for her contention that an ALJ necessarily fails to apply "the proper legal standard for evaluating the treating source's opinion" when he does not "explicitly acknowledge the . . . special deference" required. Dkt. 7 at 27; *see Henke v. Astrue*, 498 F. App'x 636, 639 (7th Cir. 2012) (holding that an ALJ's decision rejecting a treating doctor's opinion "must stand as long as she has 'minimally articulated' her reasons") (citation omitted). As a result, the ALJ did not err by declining to give Dr. Zhang's opinion controlling weight. *See id.*

### 2. Non-Controlling Factors

Plaintiff also contends that the ALJ did not follow the "appropriate checklist" set forth in 20 C.F.R. § 404.1527(c) before giving "little weight" to Dr. Zhang's opinion. Dkt. 7 at 4, 27–28. The Commissioner responds that "the regulations do not mandate that an ALJ explicitly discuss every factor in the decision." Dkt. 13 at 10.

"Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it. Rather, the ALJ is required by regulation to consider certain factors in order to decide how much weight to give the opinion . . . ." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(c)(2)). These factors include: "(1) the length of the treatment relationship and the frequency of examination . . . ; (2) the nature and extent of the treatment relationship; (3) supportability,

17

i.e., whether a physician's opinion is supported by relevant evidence, such as medical signs and laboratory findings; (4) consistency with the record as a whole; and (5) whether the treating physician was a specialist in the relevant area." *Id.* However, "[i]n weighing a treating physician's opinion, an ALJ . . . need only 'minimally articulate' his reasoning; the ALJ need not explicitly discuss and weigh each factor." *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018), *reh'g denied* (Sept. 24, 2018), *cert. denied*, 139 S. Ct. 1209 (2019).

Here, the ALJ explicitly assessed two factors—the supportability and consistency of Dr. Zhang's opinion, *see supra* p.15–17—but not the others. Because the ALJ "minimally articulate[d]" his reasoning, remand is not required on this ground.   See *Collins*, 743 F. App'x at 25; *Karr,* 2021 WL 684329, at *3 (upholding ALJ's decision that did not "march[] through the factors referenced in § 404.1527(c)(2)").

## IV.
## Conclusion

For the reasons above, the Court **AFFIRMS** the ALJ's decision denying Plaintiff benefits.  Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/19/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com